UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

 v.              Civil No. 16-cv-523-LM
                 Opinion NO. 2018 DNH 054

Jeffrey Sullender, et al.

**O R D E R**

The United States of America brings suit to enforce federal tax liens against two properties to satisfy a judgment against defendant Jeffrey Sullender. The government alleges that Sullender has avoided paying federal taxes for several years, and it asserts that Sullender transferred the two properties "through an elaborate maze of sham trusts in a transparent attempt to avoid . . . collection efforts." Doc. no. 34-1 at 23. Defendants Thomas Budziszewski, as trustee for Paradigm Trust ("Paradigm"), and Midway Holding Company ("Midway"), are the putative holders of the properties, and are alleged to be involved in the scheme.[1] All three defendants have failed to appear, and the government now moves for default judgment

---

[1] The two other defendants—the Town of Hollis and City of Nashua—are tax creditors of Sullender and hold interests in the properties. The government states that it has come to an agreement with these defendants that their interests hold priority over the federal tax liens. See doc. no. 33 at 1.

against them.  For the following reasons, the government's motion is granted.

**STANDARD OF REVIEW**

After default is entered and when the amount at issue is not a sum certain, "the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); see also KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003).  Before entering a default judgment, the court "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action."  Ramos-Falcón v. Autoridad de Energía Electríca, 301 F.3d 1, 2 (1st Cir. 2002) (quoting Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992)).  The defaulted party is "taken to have conceded the truth of the factual allegations in the complaint."  Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002) (quoting Franco v. Selective Ins. Co., 184 F.3d 4, 9 n. 3 (1st Cir. 1999)).

The defaulted party does not, however, "admit the legal sufficiency of those claims."  10 James Wm. Moore, Moore's Federal Practice § 55.32[1][b] (3d ed. 2013).  In other words, before entering default judgment, the court must determine whether the admitted facts state actionable claims.  See Sykes v. RBS Citizens, N.A., No. 13-cv-334-JD, 2016 WL 738210, at *1

(D.N.H. Feb. 23, 2016) (noting that the standard for default judgment is "akin to that necessary to survive a motion to dismiss for failure to state a claim"). Further, when "[f]aced with a motion for default judgment, a district court must exercise sound judicial discretion in determining whether the judgment should be entered." Fin. of Am. Reverse, LLC v. Carmona-Vargas, No. 16-1661, 2018 WL 522317, at *1 (D.P.R. Jan. 23, 2018) (internal quotation marks omitted).

## BACKGROUND

By virtue of their default, defendants concede the following facts alleged in the amended complaint. This is the second action filed by the government against Sullender related to his failure to file federal income tax returns between 2000 and 2005. See generally United States v. Sullender, 12-cv-387-JL (D.N.H. 2012) ("Sullender I"). Although notices of tax liabilities and demands were properly sent to Sullender, he failed to fully pay the amounts, and the government instituted the first action.

In Sullender I, as here, Sullender failed to appear, and the government moved for a default judgment and to enforce federal tax liens that arose as to the two properties. The undersigned, in her capacity as magistrate judge, wrote a Report and Recommendation granting the government's motion for a

3

default judgment of $2,379,799.81 for unpaid taxes, penalties, and interest.  See Sullender I, No. 12-cv-387-JL, 2013 WL 7390846, at *7 (D.N.H. Oct. 8, 2013).  However, the undersigned recommended that the district judge deny the motion to the extent it sought enforcement of the tax liens, concluding that the government had not demonstrated that it was entitled to such relief.  See id. at *4-7.

After the undersigned issued the Report and Recommendation, the government filed a notice of conditional voluntary dismissal as to its request for enforcement of the tax liens.  See Fed. R. Civ. P. 41(a)(1)(B) (stating that a dismissal by notice is generally without prejudice).  As a result, Chief Judge Laplante approved the Report and Recommendation in part, upholding the default judgment but declining to approve the denial of the enforcement of the tax liens.  See Sullender I, No. 12-cv-387-JL, 2013 WL 6728988, at *1 (D.N.H. Dec. 19, 2013).

The government subsequently filed this action pursuant to 26 U.S.C. § 7403.  See 26 U.S.C. § 7403(a), (c) (stating that a civil action may be filed to enforce a federal tax lien and allowing the district court to "adjudicate all matters involved [] and finally determine the merits of all claims to and liens upon the property").  The court now turns to the allegations relating to the properties.

I.   The Nashua Property

The first property is located in Nashua (the "Nashua Property").  In 1991, Sullender acquired title to the Nashua Property by warranty deed for $92,000.  The government alleges that, at least by 1995, Sullender had decided to cease filing federal income tax returns.  He began engaging in a "circuitous series of purported transfers in order to convey the Nashua Property beyond the reach of his creditors" while "still retaining dominion and control over it."  Doc. no. 1 at 7.

First, in January 1995, Sullender purported to convey the Nashua Property to Aldebaran Assets Associates ("Aldebaran").  Aldebaran was managed by John Merrick, who was affiliated with various purported trusts and business entities formed by Sullender to hold his assets.  Despite the fact that the Nashua Property represented nearly all of Sullender's known assets at that time, the transfer of the property was made with "little or no consideration," and "Sullender and Aldebaran exchanged nothing" following the conveyance.  Id. at 8.  The government alleges that Sullender retained possession and control over the property after the conveyance, noting that he continued to operate his business from the property.  In addition, Sullender filed "numerous extraneous documents" with the registry of deeds, in order to "conceal the purported transfer of the Nashua

Property." Id. at 7. At least since 1998, Sullender has not filed federal income tax returns.

Second, in November 2002, for the stated consideration of "21 U.S. silver dollars," Aldebaran purported to convey the Nashua Property to Seaside Management ("Seaside"). Id. at 8. Seaside is an entity owned, controlled, and managed by Sullender. Aldebaran received "little or no consideration" for the purported transfer of the Nashua Property to Seaside. Id. at 9. As with the previous transfer, the government alleges that Sullender effectuated this conveyance in order to put the property beyond the reach of creditors, and that Sullender attempted to conceal the transfer by filing extraneous documents with the registry of deeds. On January 4, 2007, the government filed notices of federal tax lien on the Nashua Property in the registry of deeds, based on Sullender's tax liabilities between 2000 and 2005. The notices named Sullender and Seaside as Sullender's nominee.

The third transfer occurred in January 2010. Seaside, through Sullender, purported to convey the property to Paradigm, via warranty deed. At the time of the conveyance, Ronald Ottaviano controlled Paradigm as trustee.[2] The government alleges that Ottaviano is a convicted tax evader, and it cites

---

[2] It is unclear how Budziszewski came to be trustee of Paradigm.

6

the case of United States v. Ottaviano, 738 F.3d 586 (3d Cir. 2013), which describes his tax-evasion scheme.  Through his company Mid-Atlantic Trusts and Administrators, Ottaviano marketed so-called "Pure Trust Organization[s]," which appeared to be legitimate trusts but would actually provide customers with unlimited access to and control over their accounts. Ottaviano, 738 F.3d at 589; see also doc. no. 1 at 9.  The warranty deed between Sullender and Paradigm describes the latter as "c/o Mid-Atlantic Tr & Admin."  Doc. no. 1 at 10.  The government asserts that Paradigm is a sham trust, the purpose of which is to assist Sullender in the evasion of his federal tax liabilities.  The government alleges that, notwithstanding these putative transfers, Sullender has continued to exercise dominion and control over, and enjoy the benefits of, the Nashua Property.

II. The Hollis Property

The second property is in Hollis (the "Hollis Property"). The first relevant conveyance occurred on June 21, 2004, when John H. Baltz conveyed the property to Lisa Pollard.  Doc. no. 1 at 12.  The complaint alleges that "[t]he titling of the Hollis Property in Pollard's name . . . was itself fraudulent."  Id. In its motion, the government explains that Lisa Pollard is the maiden name of Sullender's wife, Lisa Sullender.  Sullender

placed title in the name of Pollard because, by that time, Sullender had incurred substantial federal tax liabilities and was seeking to "hinder, delay, or defraud his creditors." Id. at 13. The government had already initiated efforts to collect Sullender's unpaid tax liabilities at that point. Sullender paid 72 percent of the purchase price for the Hollis Property, and retained possession and control over it, using the property as his personal residence. Like the transfers of the Nashua Property, Sullender attempted to conceal the conveyance of the Hollis Property by filing extraneous documents with the registry of deeds.

On March 25, 2005, for the stated consideration of "2 ounces of gold in coin," Pollard purported to convey the Hollis Property to Seaside. Id. On January 4, 2007, the government filed a notice of federal tax lien for the years 2000 through 2005 with the registry of deeds as to Sullender.

On May 5, 2007, as a purported gift, Seaside, through Sullender, conveyed the Hollis Property to Staci Barba, Sullender's sister. The government alleges that Barba initially had no knowledge that the Hollis Property was titled in her name. It was not until Sullender I that she discovered this fact, and she disclaimed any interest in the property during that litigation. In summer 2007, the government filed notices

of federal tax liens for Sullender's 2000-2005 tax liabilities against Barba, as Sullender's nominee.

In June 2009, a quitclaim deed was filed in the registry of deeds, in which Barba purportedly conveyed the property to Midway for $10. Midway is operated by John Baltz—who originally conveyed the property to Sullender's wife—and has an identical address to that of Paradigm. The government alleges that Sullender has continued to exercise dominion and possession over the Hollis Property, notwithstanding the purported transfers.

The government commenced this action in November 2016, and default was entered against Sullender, Midway, and Budziszewski in June 2017. See doc. nos. 23, 27.

**DISCUSSION**

The government moves for default judgment against Sullender, Midway, and Paradigm, and requests that the court permit the government to enforce the tax liens on the properties.

Under 26 U.S.C. § 6321, if a person liable to pay tax fails to do so after demand, the government obtains a lien in its favor "upon all property and rights to property, whether real or personal, belonging to such person," 26 U.S.C. § 6321, which includes property "that is held by a third party as the taxpayer's nominee," Fourth Inv. LP v. United States, 720 F.3d

9

1058, 1066 (9th Cir. 2013); see also Berkshire Bank v. Town of Ludlow, Mass., 708 F.3d 249 (1st Cir. 2013). The lien arises at the time of assessment and continues until the amount is satisfied or becomes unenforceable due to lapse of time. 26 U.S.C. § 6322. Based on the allegations in the complaint, as well as the disposition in Sullender I, a lien has arisen in the government's favor as to, among other things, Sullender's real property. See 26 U.S.C. § 6321.

Accordingly, the next question is whether the third parties which hold the Nashua and Hollis Properties do so as Sullender's nominees or otherwise subject to the federal tax liens. The government argues that, with respect to the Nashua Property, Paradigm is Sullender's nominee.[3] With respect to the Hollis Property, the government contends that either Barba or Seaside acted as Sullender's nominee, such that the conveyance to Midway was made subject to the tax lien.

"The nominee theory focuses upon the taxpayer's relationship to a particular piece of property, asking whether the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership."

---

[3] The government argues in the alternative that Sullender fraudulently transferred the Nashua Property through Aldebaran, Seaside, and Paradigm, in violation of New Hampshire law. Given the court's conclusions, it need not address this argument.

10

United States v. Isaacson, No. 09-cv-332-JL, 2011 WL 2783993, at *2 (D.N.H. July 15, 2011) (internal quotation marks omitted) (quoting Holman v. United States, 505 F.3d 1060, 1065 (10th Cir. 2007)).  Relevant factors include:

- No consideration or inadequate consideration is paid by the nominee;

- Property is placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property;

- A close relationship between the transferor or the nominee exists;

- Conveyances were not recorded;

- The transferor retained possession of the property;

- The transferor continued to enjoy the benefits of the transferred property.

Id. (quoting United States v. Kattar, 81 F. Supp. 2d 262, 274 (D.N.H. 1999)).[4]

---

[4] The First Circuit has held that "whether a particular asset belongs to a taxpayer is a question of state law." Berkshire Bank, 708 F.3d at 251 (brackets omitted).  The above factors are derived from federal case law.  See Isaacson, 2011 WL 2783993, at *2.  Nevertheless, the court applies them here; as noted by the Isaacson court, there appears to be no material distinction between how the issue would be analyzed under either federal or state law.  See id. at *2 n.3; see also May v. A Parcel of Land, 458 F. Supp. 2d 1324, 1337 (S.D. Ala. 2006) ("Federal courts confronting nominee issues have routinely used the law of other jurisdictions to flesh out amorphous or ill-defined state standards for determining nominee status.").

The court first concludes that the admitted facts state an adequate claim that the Nashua Property is subject to a tax lien under a nominee theory. See id. The above-described factors are sufficiently supported by the allegations in the complaint, including the following: Paradigm received inadequate consideration for the property; the property was placed with the trust as part of Sullender's scheme to avoid federal tax liability; Paradigm is associated with Ottaviano and Mid-Atlantic Trusts and Administrators; Sullender filed extraneous documents with the registry of deeds; and Sullender continued to operate his business from the property. The government has also sufficiently described the relationships between Sullender and the various entities that have purportedly held title to the Nashua Property. For purposes of the present motion, the government has stated an actionable claim that the tax lien attaches to the Nashua Property. See id. at *2-3.

Likewise, the admitted facts support the government's theory regarding the Hollis Property—that Barba was Sullender's nominee at the time the government filed its notice of federal tax lien. As set forth in the complaint, Sullender (via Seaside) purported to convey the property to Barba, but continued to reside on the property and enjoy its benefits. Barba, meanwhile, did not know of the transfer and later disclaimed any interest in the property. In light of the

relevant factors and other allegations in the complaint, there is a basis to conclude that Sullender attempted to place legal title with Barba while retaining "all of the benefits of true ownership." Id. at *2. Consequently, the allegations are sufficient to establish that the federal tax lien was valid when filed with the registry of deeds in summer 2007, and the conveyance to Midway was made subject to that lien. See Rodriguez v. Escambron Dev. Corp., 740 F.2d 92, 93 (1st Cir. 1984) ("Under federal law, a federal tax lien continues to encumber land, even after the legal transfer of the land."); United States v. Tempelman, 111 F. Supp. 2d 85, 93 (D.N.H. 2000) (collecting cases); see also 26 U.S.C. § 6323.

In sum, the government's complaint states an actionable claim that it has valid tax liens on the Nashua and Hollis Properties. Finding no other cause that would militate against entering a default judgment, the court grants the government's motion. See Hutchins v. Cardiac Sci., Inc., 456 F. Supp. 2d 173, 190 (D. Mass. 2006) (listing considerations governing entry of default judgment).

## CONCLUSION

For the foregoing reasons, the government's motion for default judgment (doc. no. 34) is granted. Within fourteen

days, the government shall submit its proposed order relating to the sale of the property.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 16, 2018

cc: Counsel of Record